**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARGARET PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08 C 3137** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Morton Denlow** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Margaret Phillips ("Claimant") seeks reversal or remand of the final decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), partially denying Claimant's application for Disability Insurance Benefits ("DIB"). The case presents the following issues: (1) whether the Administrative Law Judge ("ALJ") erred by not crediting all of Claimant's testimony concerning the extent and severity of her symptoms, despite finding Claimant credible; (2) whether the ALJ was required to obtain an x-ray before concluding Claimant's degenerative joint disease was not a severe impairment, or failed to analyze how non-severe impairments affected Claimant's ability to perform full-time work; and (3) whether the ALJ erroneously ignored testimony from the Vocational Expert ("VE") that certain of Claimant's alleged limitations would preclude gainful employment. For the following reasons, the Court grants Claimant's motion for

summary judgment and remands the case to the Commissioner for further proceedings consistent with this opinion.

# I. BACKGROUND FACTS

## A.    Procedural History

Claimant applied for DIB on September 20, 2004, alleging a disability onset date of November 25, 2003.  R. 127-31.  She was denied initially and on reconsideration, and requested a hearing.  R. 96-103.  On September 21, 2006, ALJ Dennis R. Green ("ALJ Green") presided over this hearing.  R. 375.  ALJ Green issued an unfavorable decision on September 25, 2006.  R. 79-88.  Claimant successfully appealed to the Appeals Council, which remanded the case for further proceedings.  R. 116, 119.

Pursuant to the Appeals Council's remand order, ALJ Denise McDuffie Martin (the "ALJ" or "ALJ Martin") conducted a second hearing on August 28, 2007.  R. 437.  Claimant, Medical Expert Ernest Mond, and Vocational Expert Michelle Peters testified at the hearing. R. 441-471.  ALJ Martin issued a partially favorable decision.  R. 16-18, 20-31.  Specifically, the ALJ found Claimant was disabled from November 25, 2003 until June 30, 2005, but that as of July 1, 2005, Claimant had the residual functional capacity ("RFC") to perform a limited range of medium work.  R. 30-31.  On April 15, 2008, the Appeals Council denied Claimant's request for review.  R. 6-8.  Claimant appeals to this Court, which now reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g).[1]

---

[1] In a 2003 hearing Claimant sought and was denied benefits for the period prior to November 25, 2003.  R. 66-72.  The ALJ found no cause to reopen this proceeding, R. 20, and the parties do not raise pre-November 25, 2003 injuries in their briefs.  Accordingly, the Court does not consider any claims to benefits for this period.

**B.     Hearing Testimony - August 28, 2007**

**1.     Margaret Phillips - Claimant**

Claimant was 52 years old, five feet four and one-half inches tall, and weighed 202 pounds at the time of the hearing.  R. 441.  She had not worked since 2003, when she experienced a seizure on the job.  R. 442.  Before that seizure, she worked full-time as a bagger on an assembly line for twelve years.  R. 442-43.  Her duties entailed unskilled work placing manufactured objects into plastic bags, stamping and placing the bags into boxes, lifting those boxes onto skids, and then wrapping the skid.  *Id.*  The job required her to lift boxes weighing thirty to fifty pounds and to remain standing while working.  R. 443.

Claimant experienced occasional seizures.  R. 444.  She suffered two seizures in the three months prior to the hearing, which she believed they were triggered by stress.  *Id.*  Claimant does not drive due to the risk of seizures.  R. 447.

Claimant testified she suffered severe migraine headaches on a daily basis.  R. 445, 448-49.  To recover from a headache, Claimant lies down in the dark for one half hour to one hour.  R. 445.  Bright lights aggravate her headaches.  R. 448-49.  Claimant said that she begins to feel discomfort after thirty minutes of exposure to bright light.  R. 449.

Claimant's medicine makes her feel groggy and uncomfortable, and causes her to nod off when watching television or reading a book.  R. 443, 452.  Claimant's typical day involves watching television, talking with her sister, and performing light household chores such as cooking, cleaning, and laundry.  R. 446-47.  She occasionally takes walks of two to three blocks.  R. 446.  A weekly church service and Bible study are her only regular social

3

activities.  R. 447.  At church, Claimant cannot stand up for thirty minutes.  R. 448.  When she carries groceries up the stairs to her apartment, she stops to rest every five steps.  R. 450.  Although Claimant testified she can lift twenty pounds, she was uncertain what constitutes twenty pounds.  *Id.*

### 2.     Dr. Ernest Mond - Medical Expert

The Medical Expert, Dr. Ernest Mond ("ME"), opined Claimant had hypertension and Type II diabetes, both of which were under control from medication.  R. 454.  He noted the Claimant was overweight but had lost approximately forty pounds on the advice of her doctors.  *Id.*  The ME also noted "mild findings" of neuropathy[2] in the medical record, but found this was "in no way disabling or significant."  *Id.*

According to his review of the medical records, the ME explained Claimant had at least a twenty-five year history of complex partial seizures.  R. 454-55.  However, he emphasized that the records from her consultative neurological examination showed she had suffered only two recent seizures, one in 2002 and one in 2005.  *Id.*  The ME testified this reflected "exemplary" control of Claimant's seizure condition, and highlighted a note from Claimant's doctor, dated June 2005, R. 296, which gave her permission to drive.  R. 455.

---

[2] Neuropathy is defined as "[a] classical term for any disorder affecting any segment of the nervous system."  Stedman's Medical Dictionary (27th Ed. 2000).

The ME opined that pseudotumor cerebri[3] caused Claimant's headaches. *Id*. He noted records showing Claimant's headaches improved after she underwent a lumbar puncture to remove spinal fluid, followed with prescription medication. R. 456.

The ME opined that none of Claimant's conditions met or medically equaled a listed impairment. R. 456-57. In his view, the headaches were incapacitating prior to March 2005. R. 463. He agreed with the state agency physician's RFC assessment that Claimant could perform medium work, but noted the seizure disorder would prevent Claimant from working on scaffolds, ropes, ladders, hazardous machinery, or at unprotected heights. R. 457-58. Asked if he would discount Claimant's testimony that she needed to lie down for one to one and a half hours a day to recover from a headache, the ME replied that he would not discount her testimony, but explained he could find no evidence of medical conditions to would cause such symptoms. R. 458.

### 3. Michelle Peters - Vocational Expert

Vocational Expert Michelle Peters ("VE") testified that Claimant had previously worked in a machine tender unloading position, classified as unskilled with medium physical demand. R. 465-66. The ALJ asked the VE a hypothetical question about what type of work

---

[3] Pseudotumor cerebri is "a disorder, commonly associated with obesity in young females, consisting of cerebral edema with narrowed small ventricles but with increased intracranial pressure and, frequently, papilledema." Stedman's Medical Dictionary (27th Ed. 2000). Edema is "[a]n accumulation of an excessive amount of watery fluid in cells or intercellular tissues." Id. Papilledema is "edema of the optic disk, often due to increased intracranial pressure." *Id.*

a person with Claimant's limitations would be able to perform. R. 466. The VE was asked to assume:

> [A]n individual of the claimant's age, education, and work experience. . . . We would be limited to medium work, and no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs with occasional balance and stooping, kneeling, crouching, and crawling. The hypothetical person should avoid unprotected heights or dangerous or moving machinery, and it should be an unskilled low stress type of job.

R. 466. The VE explained these restrictions eliminated past relevant work. R. 466. The VE opined, however, that the hypothetical person could perform other work with these limitations, including packaging, assembly, or clerking positions. *Id.* Claimant's attorney then asked the VE whether employers in the stated occupations would be able to accommodate a sensitivity to fluorescent lighting or allow the individual to lie down for one or two hours each day. R. 468. The VE stated competitive employment in the mentioned occupations would not permit a person to lie down for an hour. *Id.*

## C. Medical Evidence

Claimant appeals only the ALJ's finding that Claimant was not disabled after July 1, 2005. For this reason, medical evidence prior to this date is only discussed to the extent it is relevant as context for post-July 1, 2005 medical conditions.

### 1. Dr. Li Zhang - Treating Neurologist

Neurologist Dr. Li Zhang ("Dr. Zhang") and other Neuromed Clinic physicians treated Claimant from 2002 to August 2006. R. 232-251, 288-316. Neuromed Clinic records show Claimant consistently reported seizures, daily headaches, obesity, sleep apnea, and

hypertension. R. 232-251, 290-313. Dr. Zhang noted Claimant complained of blurred vision with headaches on February 7, 2005. R. 232. On March 2, 2005, Dr. Zhang performed a lumbar puncture to relieve pressure. R. 305. Approximately three weeks later, Claimant reported she felt much better and she had not had a headache in two weeks. R. 303. At that time, Dr. Zhang noted the lumbar puncture procedure established that Claimant had pseudotumor cerebri. *Id.* Claimant underwent a sleep study in August 2005. R. 332. She was diagnosed with moderate obstructive sleep apnea[4]. R. 333.

During a December 2005 checkup, Claimant reported she felt better until two months earlier, when her headaches began recurring on an "almost daily" basis. R. 293. The doctor prescribed Acetazolamide and Vicodin, and encouraged Claimant to lose weight. *Id.* Over the next three months, Claimant experienced only a "few" non-severe headaches, exercised daily, and lost some weight. R. 289. In August 2006, Dr. Zhang again noted daily headaches aggravated by exposure to light, but wrote "[M]otrin helped her," and "[s]he remains to have normal activities, she is doing more regular exercise." R. 288. By that date Claimant had lost thirty-five pounds. R. 288.

### 2. Treatment by Westside Medical Associates

Claimant was also treated at Westside Medical Associates, Ltd. ("Westside") during the relevant period. R. 320-22, 334-47. Westside records show Claimant complained of

---

[4]Sleep apnea is defined as "central and/or peripheral apnea during sleep, associated with frequent awakening and often with daytime sleepiness." Stedman's Medical Dictionary (27th Ed. 2000).

fatigue and headaches on October 21, 2005.  R. 336.  On January 3, 2006, Claimant came to Westside with muscle pain in her neck, shoulder, and right arm.  R. 339.  At that time and again later on February 16, 2006, the doctors noted tenderness in her clavicle and trapezium muscles, and recommended Claimant take ibuprofen.  R. 339-40.  In July 2006, Westside physicians noted diabetes, sleep apnea, a worsening eye condition, and hypertension.  R. 344.  The next month, Claimant underwent a bone density scan which showed a statistically significant decrease in bone density of Claimant's lumbar spine.[5]  R. 350.

### 3.       Dr. Samina Bokharl - State Agency Consultative Examiner

Dr. Samina Bokharl ("Dr. Bokharl") examined Claimant in April 2006 as part of a neurological consultative examination.  R. 276-86.  During that examination Claimant stated she "used to get a lot of headaches," and reported that the current frequency of her headaches was once per week.  R. 276.  The doctor noted the Claimant's history of seizures, but she had not suffered a seizure for approximately fourteen months.  R. 277. Dr. Bokharl's report also noted high blood pressure (hypertension), obesity, and a four-year history of diabetes, which caused a "pins-and-needles" sensation in Claimant's feet.  *Id.*  The doctor observed Claimant had no "apparent cognitive difficulties;" Claimant "moved about the examination room without apparent hesitation, difficulty, or discomfort;" and "Claimant was able to climb onto and get off of the examination table with ease."  R. 278.

### 4.       Advocate Health Center and Neurology Consultants

---

[5]Claimant testified during the 2006 hearing before ALJ Green that this bone density scan led her doctor to suspect an onset of osteoperosis.  R. 411.

From February 2007 until July 2007, Dr. Michael J. Shaenboen ("Dr. Shaenboen") and other Advocate Health Center physicians treated Claimant. R. 353-74. Advocate Health Center doctors noted persistent headaches, sleep apnea, seizure disorder, and diabetes. R. 354, 356, 365, 372-73. Dr. Shaenboen evaluated Claimant's conditions on April 12, 2007, and re-evaluated her in May 2007. R. 358, 361. His reports note Claimant is unconscious during her seizures, and she is often unaware even after the fact that one has occurred. *Id.* During the May evaluation, Claimant reported that she had a seizure episode while on the phone with her sister, during which time she "spaced out" and mumbled incoherently for a few minutes. R. 358. Dr. Shaenboen noted generally that Claimant "is somewhat vague with her history. It is difficult to get details out of her." R. 361.

**D.      The ALJ's Decision - September 25, 2007**

The ALJ rendered a decision approving Claimant's application for DIB for the period from November 25, 2003 through July 1, 2005, but denying Claimant's application for DIB as of July 1, 2005 until September 25, 2007 (the date of the decision). R. 20-31. The ALJ reviewed Claimant's application under the familiar five-step sequential analysis. *Id.* *See infra* Part II.B (Disability Standard). At step one, the ALJ found the Claimant had not engaged in substantial gainful activity since November 25, 2003, Claimant's alleged onset date. R. 24. At step two, the ALJ found Claimant's complex partial seizures, diabetes, obesity, hypertension, pseudotumor cerebri, headaches, and sleep apnea were severe impairments at all times relevant to the decision. *Id.* At step three, the ALJ determined that from November 25, 2003 through June 30, 2005, none of Claimant's impairments or

combination thereof met or medically equaled a listing.  R. 25-26.  The ALJ next found Claimant was unable to sustain any substantial gainful activity from November 25, 2003 through June 30, 2005.  R. 26-28.  At step five, the ALJ found that from November 25, 2003 through June 30, 2005, Claimant was unable to perform past relevant work, and found Claimant was unable to perform any jobs existing in significant numbers in the national economy.  R. 28-29.  Accordingly, the ALJ determined Claimant was under a disability for the period from November 25, 2003 through June 30, 2005.  R. 29.

The ALJ next considered whether the disability continued through the date of the decision, using the eight-step test defined in 20 C.F.R. § 404.1594.  R. 22-23, 29.  The ALJ had already determined that Claimant had not engaged in substantial gainful activity at any time relevant to the decision; thus, step one was satisfied.  R. 23, 24.  At step two, the ALJ found Claimant did not have any impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404.1594(f)(2).  R. 29.  At step three, the ALJ determined that as of July 1, 2005, medical improvement had occurred.  *Id.*  Thus, the ALJ found that Claimant's disability ended on that date.  *Id.*  At step four, the ALJ found this improvement was related to Claimant's ability to work.  R. 30.  Since step four was satisfied, the analysis proceeded to step six.  R. 23.  Step six was met because the ALJ had determined Claimant's impairments were severe at all relevant times.  R. 23-24.  At step seven, the ALJ found Claimant had been unable to perform past relevant work after July 1, 2005.  R. 30.  Also at step seven, the ALJ found that from July 1, 2005, until the date of the decision, Claimant had the RFC to perform medium work, except for climbing ladders, ropes,

10

or scaffolds; more than occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and working at heights or around moving machinery. R. 29. Finally, at step eight, the ALJ determined Claimant's RFC gave her the ability to perform a significant number of jobs in the national economy from July 1, 2005 onward. R. 30.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Perales*, 402 U.S. at 401). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart*, 458 F.3d 580, 584

(7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539 (7th Cir. 2005)). It may not, however, re-evaluate the facts, "re-weigh [the] evidence . . . or substitute [its] own judgment for that of the Commissioner." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.* at 368-69. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365. An individual is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A disabled individual is eligible for DIB, however, only if she is under a disability. 42 U.S.C. § 423(a)(1)(E). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful

employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five step sequential analysis. 20 C.F.R. §§ 404.1520(a)-(f). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005). Once the claimant has proven she cannot continue her past relevant work because of physical limitations, the ALJ carries the burden to show that other jobs which the claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

### C.    Medical Improvement Standard

In cases such as the one before the Court, where an individual is determined to be disabled and entitled to DIB for a closed period, the Commissioner uses an eight-step sequential process to determine whether an individual's disability continues.  20 C.F.R. § 404.1594, *see also Jones v. Barnhart*, 2005 WL 66072, at *8 (N.D. Ill. Jan. 10, 2005).  The ALJ must inquire:

> (1) whether the claimant is engaged in any substantial gainful activity;
> (2) if not, whether claimant has an impairment or combination of impairments meeting or equaling the severity of an impairment listed in Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P;
> (3) if not, whether there has been medical improvement as shown by a decrease in medical severity;
> (4) when there has been medical improvement, whether the medical improvement is related to claimant's ability to do work;
> (5) if no to steps three or four, whether any exceptions in 20 C .F.R. § 404.1594(d) apply;
> (6) if yes to step four, whether all current impairments in combination are severe;
> (7) and if they are severe, whether, in considering a claimant's RFC, a claimant can do work done in the past; and
> (8) if not, whether the claimant can do other work given the claimant's RFC.

20 C.F.R. § 404.1594(f)(1)-(8).

The RFC is defined as the most an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities.  20 C.F.R. §§ 404.1545; 416.945; *see also Jones*, 2005 WL 66072 at *8.  The Commissioner has the burden of proving that Plaintiff has the ability to engage in other work existing in significant numbers in the national economy.  *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

# III. DISCUSSION

This case presents the following issues: (1) whether the ALJ erred by not crediting all of Claimant's testimony concerning the extent and severity of her symptoms, despite finding Claimant fully credible; (2) whether the ALJ was bound to obtain an x-ray before rejecting Claimant's claim that her degenerative joint disease was a severe impairment, or failed to analyze how non-severe impairments affected Claimant's ability to perform full-time work; and (3) whether the ALJ erroneously ignored the VE's testimony that Claimant's alleged symptoms would preclude gainful employment. The Court considers each issue below in turn.

## A. The ALJ Erred by Finding Claimant Credible but Failing to Consider or Explain her Reason for Rejecting Claimant's Testimony Concerning the Limiting Effect of Her Symptoms.

Despite finding Claimant credible, the ALJ improperly ignored key portions of her testimony that, if credited, would have altered the RFC finding. The ALJ's decision is thus inherently inconsistent such that it fails to adequately articulate its finding in a manner that allows for meaningful review. *Giles ex rel Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Remand is therefore necessary to allow for clarification of the ALJ's reasoning.

In considering whether a claimant is disabled, an ALJ must review and consider all of the relevant evidence presented at the hearing. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). Though the ALJ does not need to discuss every piece of evidence in the record, she is not free to ignore evidence that contradicts her conclusions. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Rather, contradictory evidence must be confronted and

rejected with explanation. *Id.*

As part of this evidentiary review, once a medically determinable impairment has been substantiated with objective evidence, the ALJ is required to evaluate the intensity, persistence, and limiting effects of the symptoms reasonably arising from those impairments. SSR 96-7p, at *2. If objective medical evidence concerning the severity of symptoms is not enough by itself to support a fully favorable decision, the ALJ must consider the claimant's testimony on the subject. SSR 96-7p, at *2; *Briscoe v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005) (citing 20 C.F.R. § 404.1529 (c)(2), explaining it requires an ALJ to consider a claimant's subjective complaints of pain and the effects on the claimant even where the objective medical evidence does not substantiate the claimant's statements). This necessitates a finding concerning the claimant's credibility. SSR 96-7p, at *2; *Briscoe*, 425 F.3d at 354.

In this case, the ALJ mentions Claimant's credibility twice in her decision. On page seven, during the discussion of Claimant's testimony regarding the severity of her headaches and other symptoms, the ALJ notes "I find the claimant credible." R. 26. On the next page, under a heading discussing the period in which the ALJ found Claimant was disabled, the ALJ finds "[a]s noted above, the claimant's statements concerning the limiting effects of her symptoms are credible at all times relevant to this decision." R. 27. The ALJ never explicitly indicates that she finds Claimant any less than credible. R. 20-31.

However, finding Claimant credible is inconsistent with the finding the ALJ adopted with respect to Claimant's RFC for the period after July 1, 2005. At the hearing, Claimant

said she was suffering severe headaches every day, and she needed to lie down in the dark to recover. R. 445, 447, 449. She testified that medicine used to alleviate her headaches within a half hour, but it now required a full hour for the headaches to subside. R. 445. Despite this testimony, the ALJ noted only "improvement" in Claimant's headache condition. R. 26.

Claimant's testimony also contradicts the finding that Claimant had the RFC to perform medium work, as that term is defined in 20 C.F.R. § 404.1567(c). R. 29. Medium work requires the ability to lift fifty pounds occasionally and twenty-five pounds frequently, 20 C.F.R. § 404.1567(c), but Claimant testified she could only lift twenty pounds. R. 448, 450. Medium work also entails standing or walking for up to six hours during an eight-hour workday, SSR 83-10, at *6, but Claimant testified she could not stand for more than thirty minutes at a time. R. 448. *See* SSR 83-10, at * 6 ("In most medium jobs, being on one's feet for most of the workday is critical.")

Seemingly in recognition of the inherent conflicts described above, the Commissioner does not argue the ALJ's RFC assessment is consistent with a finding Claimant is credible. Rather, the Commissioner asserts that the credibility finding was limited to Claimant's testimony regarding her symptoms as they existed during the period in which Claimant was found to be disabled. The Commissioner insists the ALJ gave less weight to Claimant's testimony about her symptoms for the subsequent period.

With respect to the second credibility finding, the Court agrees it is limited to testimony concerning Claimant's symptoms before July 1, 2005. This finding was made under a point heading that discussed and found Claimant's condition before that date to be

disabling. R. 26-27. The ALJ seems to further indicate that this credibility finding was limited in scope when she noted that she found Claimant credible "at all times relevant to this decision." R. 27.

The first credibility finding on page seven is more problematic. R. 26. The ALJ's simple conclusion, "I find the claimant credible," indicates that this statement was not limited to any time frame. R. 26. In fact, it seems to specifically refer to Claimant's testimony about her symptoms as they existed at the time of the hearing. In the same paragraph, the ALJ recognizes that Claimant testified her headaches required her to lie down for one-half hour, and that she had two seizures in the past three months. *Id.* When Claimant gave this testimony, she was speaking about her current symptoms. R. 444-45, 447-49. Accordingly, the Court is compelled to find that this credibility finding refers to the entirety of Claimant's testimony.

Finding the Claimant credible, but failing to credit her statements about the limiting effect of her symptoms in the RFC finding, was error. In her RFC finding, the ALJ relied heavily upon the "objective medical record," which does in fact seem to support finding that Claimant had the RFC to perform medium work. However, relying on this evidence necessarily contradicted her finding that Claimant was credible. In doing so, the ALJ effectively qualified and limited her credibility finding without explaining why. The ALJ is not bound to take Claimant's statements at face value, but Claimant's testimony about the intensity, persistence, or limiting qualities of her symptoms may not be disregarded without providing analysis that makes "clear to the individual and to any subsequent reviewers the

weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2; *see also Giles*, 483 F.3d at 489 (explaining that if a claimant is found credible, it is error to deny benefits without explaining why the testimony is consistent with the outcome); *Briscoe*, 425 F.3d at 354, 357 (remanding for failure to explain reasons for disregarding the claimant's testimony); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005) (evidence that does not support the ALJ's decision cannot be ignored; it must be confronted and rejected); *Indoranto*, 374 F.3d at 474 (ALJ "must confront the evidence that does not support [her] conclusion and explain why it was rejected"; *Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) (remanding in part because the ALJ failed to credit testimony without stating reasons).

The Seventh Circuit has regularly recognized that, consistent with SSR 96-7p, an ALJ may not disregard a claimant's testimony about the severity of her symptoms without providing careful analysis. For example, in *Briscoe*, the court remanded for further proceedings because the ALJ failed to "evaluate whether [the claimant]'s statements about the intensity and persistence of his pain were consistent with the available evidence." 425 F.3d at 353-55. The ALJ in *Golembiewski* disregarded the claimant's testimony, finding the claimant was not credible "for the reasons set forth in the body of the decision." 322 F.3d at 915-16. However, the ALJ in that case did not actually state any reasons. *Id.* at 915. The Seventh Circuit remanded the case because the claimant's testimony, like Claimant's here, was directly contradictory to the ALJ's finding. *Id.* at 916. *See also Giles*, 483 F.3d at 489 (remanding because ALJ's decision was apparently inconsistent with testimony; emphasizing

that the ALJ must either explain basis for finding witness not credible or explain why testimony is consistent with finding).

Here, the ALJ's finding that Claimant was credible at all relevant times is incompatible with her ultimate findings regarding Claimant's RFC. The failure to reconcile these findings requires remand for further clarification. On remand, the ALJ must complete the requisite analysis of Claimant's credibility and weigh any findings against the remaining evidence. If Claimant is credible, then the RFC assessment must take heed of the symptoms she reports suffering. If Claimant is not credible, the ALJ must, in accordance with SSR 96-7p, explain why.

**B.     The ALJ Did Not Err in Finding that Claimant's Degenerative Joint Disease was not Severe, but the RFC Assessment Failed to Take Some of Claimant's Impairments into Account.**

Claimant argues the ALJ erred by failing to order x-rays to determine whether her degenerative joint disease was a severe impairment, and by ignoring Claimant's non-severe impairments in the RFC assessment. The Court finds the ALJ was not required to order new x-rays, but the ALJ failed to take key evidence of Claimant's impairments into account.

**1.     The ALJ Did Not Have a Duty to Order X-Rays Before Declining to Find Degenerative Joint Disease a Severe Impairment.**

Claimant argues that in the ALJ's step three determination of the presence of severe impairments, the ALJ's opinion expressed a concern for the sufficiency of the evidence of degenerative joint disease. In light of this concern, Claimant argues, the ALJ was bound to order x-rays to address the perceived insufficiency. The Court disagrees. The ALJ had

sufficient evidence to make an appropriate finding as to the extent of the degenerative joint disease, and it was reasonable for her to make this finding without the aid of additional x-ray evidence.

At the hearing, Claimant had the burden to prove her disability. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Where, as here, an applicant for disability benefits is represented by counsel, the ALJ is "entitled to assume that the applicant is making [her] strongest case for benefits." *Ray v. Bowen*, 843 F.2d 998, 1006 (7th Cir. 1988). However, the ALJ does have a limited duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d at 437. Pursuant to 20 C.F.R. § 404.1512(e), the ALJ must request additional medical evidence when she finds the evidence presented is inadequate to allow her to make a disability determination.

In her opinion, the ALJ dismisses Claimant's allegation that her degenerative joint disease impaired her ability to work, and in support of this finding cites the lack of x-ray evidence showing a medically determinable musculoskeletal impairment. R. 26. But this is not the only reason she gives. She also notes that her "review of the record indicates her complaints [of joint pain] presented after overuse."[6] *Id.*

Most notably, although there were intermittent medical records showing Claimant had complained of pain in various joints, *see* R. 252, 260, 265, 320, 322, and 332, there was no evidence that this condition was debilitating. Claimant offered no testimony about limiting effects of her degenerative joint disease, and neither the ME nor the VE opined that

---

[6] On R. 322, Westside physicians noted "L knee pain - DJD - overuse."

degenerative joint disease would restrict Claimant's functional capacity. The ALJ has a duty to procure a full and fair record, but the burden to prove disability remains the claimant's at all times. *Smith v. Apfel*, 231 F.3d at 437. In light of the dearth of evidence showing degenerative joint disease was disabling, it was entirely reasonable for the ALJ to determine that she did not require x-rays. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) ("[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand").

### 2. The ALJ's RFC Assessment Failed to Consider Some of Claimant's Alleged Impairments.

Claimant argues the ALJ's RFC assessment failed to analyze evidence regarding Claimant's degenerative joint disease, seizure disorder, inability to concentrate, fatigue, inability to stand for longer than thirty minutes, and need to lie down for one-half hour to one hour per day. The Court finds that while the ALJ took some of these impairments into account, she neglected to sufficiently analyze important evidence regarding Claimant's exertional ability. The ALJ will have the opportunity to address certain of these issues upon remand.

### a. Degenerative Joint Disease

As explained above, the record was substantially lacking in evidence that would indicate Claimant's degenerative joint disease, to the extent she suffered it at all, had any effect on her functional capacity. Where a particular disability wholly lacks evidentiary support, an ALJ is free to dismiss it without articulating specific reasoning. *Scheck*, 357 F.3d

at 700-01. The ALJ explicitly dismissed degenerative joint disease as a limitation. R. 26. The ALJ incorporated and further clarified this finding into her RFC assessment when she noted Claimant's impairments were "controlled," and found that Claimant's "reported muscular pain" did not "seriously compromise her functional abilities." R. 29. Given the lack of evidence presented to the contrary, it was reasonable and sufficient for the ALJ to quickly dismiss degenerative joint disease as a limitation on Claimant's functional capacity in this way. *Scheck*, 357 F. 3d at 700-01.

### b.     Seizure Disorder

Claimant also claims that the ALJ's RFC assessment did not take her well-documented seizure disorder into account. To the contrary, the ALJ was careful to tailor her RFC finding in a manner that would accommodate Claimant's seizure disorder. R. 29. The ALJ noted that Claimant continued to suffer "ongoing intermittent, non-convulsive seizures." *Id.* "Consequently," she explained, "I have given the aforementioned non-exertional limitations and restricted her to unskilled work." *Id.* Indeed, the ALJ found the Claimant's RFC had the following special limitations: Claimant could not climb ladders, ropes, or scaffolds; could not more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and could not work at heights or around moving machinery. *Id.* Each of these limitations recognizes the dangers posed in certain work environments for a person with a seizure disorder. Thus, Claimant's argument that the ALJ ignored her seizure disorder in assessing her RFC is without merit.

### c.     Symptoms Related to Exertional Ability

The ALJ's RFC assessment did fail to take into account evidence of symptoms related to Claimant's exertional ability. *See* R. 29-30. The inconsistencies between Claimant's testimony as to her exertional ability and the ALJ's RFC assessment are described in detail above. *Supra*, Part III.A. To briefly restate: at the hearing, Claimant testified that she could not lift more than twenty pounds, R. 448, 450; suffered chronic fatigue, R. 443, 452; could stand no longer than thirty minutes, R. 448; had difficulty climbing more than five stairs at one time, R. 450; and needed to lie down for one half hour to an hour per day to recover from a headache, R. 445, 447, 449. Despite this testimony, the ALJ found Claimant capable of performing "the full range of medium work," R. 30, which entails the ability to lift twenty-five pounds frequently and fifty pounds occasionally and stand for six hours in an eight hour workday. 20 C.F.R. § 404.1567(c).

The ALJ, sitting as the trier of fact, had the discretion to reject Claimant's testimony concerning her exertional ability. *See* SSR 96-7p, at *4 (explaining an ALJ may accept all, none, or some of the Claimant's testimony as truthful). However, the ALJ must explicitly confront relevant evidence before rejecting it. *Indoranto*, 374 F.3d at 474. Specifically, she must provide particular reasons for discrediting Claimant's testimony concerning the severity, persistence, and limiting effect of her symptoms. SSR 96-7p, at *2; *Golembiewski*, 322 F.3d at 915. The ALJ here never confronted Claimant's testimony that, if credited, plainly would have altered her RFC assessment. Thus, for mainly the same reasons described above in Part III.A, *supra*, the ALJ's opinion lacks sufficient analysis for meaningful review. Claimant's application must be remanded to allow for a more thorough

consideration of the conflicts present in the evidentiary record. *Steele*, 290 F.3d at 940 (when an ALJ's decision "is so poorly articulated as to prevent meaningful review, the case must be remanded").

### C. The Sufficiency of the ALJ's Hypothetical to the VE is Impossible to Meaningfully Review because of Conflicting Issues of Fact Left Unresolved in the Record.

The ALJ relied on the VE's response to her hypothetical question in finding the Claimant was able to work after July 1, 2005. R. 30. This hypothetical question did not include key facts that, if established, would have resulted in a dramatically different outcome. The ALJ did not resolve these facts. For this reason, it is not possible for the Court to meaningfully review the sufficiency of the hypothetical or the factual findings that it established.

As part of her overall determination that Claimant was not disabled after July 1, 2005, the ALJ found Claimant was able to perform a significant number of jobs in the national economy. R. 30. In doing so, the ALJ relied exclusively on the VE's response to her hypothetical question, in which the VE stated the person the ALJ described could work as a packager, assembler, or counter clerk. R. 30, 466. The ALJ's hypothetical did not include the limitation suggested by Claimant's testimony, which was that Claimant needed to lie down for up to one hour per day to recover from a headache. R. 30. Claimant's counsel asked the VE if this limitation would affect the hypothetical person's ability to work, and the VE responded that such an accommodation would not be possible in competitive employment. R. 468. The ALJ's opinion did not address this portion of the VE's testimony.

ALJs often rely on VE testimony, elicited by way of hypothetical questions, to determine a claimant's ability to work. *See*, *e.g.*, *Indoranto*, 374 F.3d at 473. In the Seventh Circuit, this practice is upheld as long as the hypothetical incorporates "*all* [of the claimant's] limitations supported by medical evidence in the record." *Steele*, 290 F.3d at 942 (emphasis in the original) (vacating judgment of district court and remanding in part because the ALJ relied on hypothetical to VE that did not include symptoms of the claimant's depression, which rendered VE's testimony "incomplete"); *Indoranto*, 374 F.3d at 474 (reversing and remanding in part because the ALJ relied on hypothetical to VE that did not include the claimant's blurred vision or headaches); *Young*, 362 F.3d at 1004-05 (reversing and remanding because ALJ relied on hypothetical to VE that did not include the claimants "social and temperamental impairments"). This requirement ensures that the VE does not declare the claimant capable of performing work she cannot actually perform. *Young*, 362 F.3d at 1003.

The instant case demonstrates the importance of this rule. Here, there is no need to speculate about whether the VE's testimony would be different had she been asked to consider Claimant's need to lie down for an hour per day to recover from a headache. Testimony elicited by Claimant's counsel demonstrates that the VE's opinion would have altered dramatically.

The question then becomes whether the limitation advanced by Claimant's counsel, namely Claimant's need to lie down for an hour or more per day, is supported by the record. As described *supra*, Parts III.A and B.2, this is a key factual question that the ALJ failed to

address with sufficient analysis to allow for meaningful review. If the limitation is supported by the record (*i.e.*, if the ALJ found Claimant did, in fact, need to lie down for one hour per day), the ALJ's reliance on the VE's response to her hypothetical would be misplaced, because it would be missing a material limitation. *See Steele*, 290 F.3d at 942; *Indoranto*, 374 F.3d at 474; *Young*, 362 F.3d at 1003-05. If, on the other hand, the ALJ chose not to credit this portion of Claimant's testimony (and supported that finding with specific reasons in accordance with 96-7p, see *supra* Part III.A), the reliance on her hypothetical might be appropriate.

Thus, from the current record, the sufficiency of the ALJ's hypothetical is impossible to evaluate, since the ALJ never adequately resolved the core factual issue of, *inter alia*, whether Claimant needed to lie down for one hour per day. On remand, this issue, and others, need to be resolved.

## IV. CONCLUSION

The Court decides the issues raised as follows: (1) the ALJ erred by finding Claimant credible but failing to credit Claimant's testimony concerning key limitations on her ability to work; (2) the ALJ did not violate her duty to develop a full and fair record by not ordering x-rays, but the ALJ's RFC assessment failed to consider important evidence concerning Claimant's ability to work; and (3) the ALJ's reliance on the VE's testimony is not capable of review in light of existing unresolved issues of key fact. **For the reasons set forth in this opinion, the Court grants Claimant's motion for summary judgment and remands the case to the Commissioner for further proceedings in accordance with this opinion.**

**SO ORDERED THIS 6th DAY of MARCH, 2009**

_Morton Denlow_
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies sent to:**

Nastassia G. Johnson     Donna L. Calvert
Barry A. Schultz       Kyle D. Kickhaefer
The Law Offices of Barry A. Schultz, P.C. Social Security Administration
1609 Sherman Ave., Ste. 205    200 West Adams St., Ste. 3000
Evanston, IL 60201      Chicago, IL 60606

Counsel for Claimant      Counsel for Defendant